LEWIS STEIN *vs.* PETER P. SWENSEN, Sheriff, and another.

August 6, 1890.

**Usury—Agreement for Extension at Illegal Interest.**—A contract for the loan of money for a stated time, at a rate of interest not usurious, is not avoided, and the original debt forfeited, by a contemporaneous agreement not intended as a means of evading the usury law, that at the option of the borrower the time of payment may be extended by the payment of more than the legal rate of interest for the period of the extension.

**Same—Exactions by Agent—Liability of Principal—Evidence.**—If a general agent loaning the money of his principal makes an illegal exaction from the borrower solely for his own benefit, and without the knowledge, authority, or sanction of his principal, who in no manner ratifies it, the latter is not affected by such illegal exaction, but the acts of the general agent are to be presumed to have been authorized, in the absence of proof to the contrary.

**Same—Rights of Debtor's Assignee in Insolvency.**—An insolvent debtor having made a general assignment of all his property for the benefit of creditors, the assignee may assert the invalidity, by reason of usury, of mortgages upon the assigned property given by the assignor prior to the assignment.

**Same—Rights of Sheriff under Attachment.**—A sheriff holding the property under a writ of attachment against the property of the mortgagor may assert the invalidity of the mortgage for usury.

**Replevin—Assignee in Insolvency Sued as an Individual.**—A defendant sued personally for a wrongful detention of goods, and who appears to have acted as an assignee in insolvency, is not entitled to have the action dismissed merely because he was not sued in his representative capacity.

Appeal by plaintiff from an order of the district court for Hennepin county, *Hicks*, J., presiding, refusing a new trial.

*Simon Meyers* and *Hart & Brewer*, for appellant.

*Selden Bacon*, for respondents.

DICKINSON, J. This action is for the conversion of personal property. The plaintiff's rights in respect to the property are those of a mortgagee, the owners of the property, a partnership bearing the name of H. C. Vaughn & Co., having mortgaged the same to the plaintiff in June, 1888, by two separate mortgages given to secure the promissory notes of the mortgagors to the mortgagee for $500 and $300, respectively, payable 30 days after date, with interest at the rate of 10 per cent. per annum. The defendant Swensen, as sheriff of Hennepin county, took the property in September, 1888, as the property of H. C. Vaughn & Co., under a writ of attachment issued to him in an action by other parties against H. C. Vaughn & Co. Three days after that attachment the members of the partnership of H. C. Vaughn & Co. made a general assignment of all their property to the defendant Knowlton, for the benefit of their creditors, pursuant to the insolvent law of 1881. Knowlton qualified as such assignee, and thereafter duly signified his election as such assignee to retain the attachment, and pursuant to the statute he was substituted for the plaintiff, as a party in the action in which the attachment had been made. The defence relied upon is that the mortgages were void for usury.

The case before us may be thus stated: The plaintiff resides in the city of New York. Vaughn & Co. did not negotiate or deal with him personally in respect to these matters, but only with a brother of the

plaintiff, one *Henry* Stein, in the city of Minneapolis. Vaughn & Co. agreed to pay Henry Stein 3 per cent. of the moneys borrowed, for his services in connection with the loans, and did make such payments at the time of the making of the loans. According to the first, third, and fourth special findings of the jury, Henry Stein was the general agent of the plaintiff in matters of this kind. The 3 per cent. thus charged by him, and paid by Vaughn & Co., was but a reasonable compensation for his services in connection with the making of the original loans, and the plaintiff did not receive any part of it. At the maturity of the notes, 30 days after their making, they were renewed or extended for another month, the debtors paying to Henry Stein, as required by him, the same percentage (3 per cent.) on the principal debts. This was again repeated, and a second renewal secured for a like period, upon payment of the same sum, at the expiration of the term of the first renewal. At this point there was some conflict in the testimony. On the part of the plaintiff it was claimed that the percentage paid for such renewals was but a reasonable compensation to the plaintiff's agent for his proper services in connection with the renewals, and that this feature of the case was no part of the original agreement for the loan. The evidence on the part of the defendants tended to show that the original agreement embraced a condition for such renewals. The evidence was insufficient to have justified the claim that this was a reasonable compensation for services, and the general and special verdicts involve the conclusion on the part of the jury that these were usurious exactions, in which the plaintiff shared. The jury also found specifically that it was a part of the original agreement that renewals of the notes might be had for a month after their maturity by the payment of 3 per cent. of the sums loaned.

In view of the third and fourth special findings of the jury, it is apparent that their general verdict must have been based alone upon the idea that the agreement for the payment of 3 per cent. for such extension was usurious, and worked a forfeiture of the whole debt. That the jury took this to be the law of the case is apparent from the charge of the court, to which exception was taken. The court

instructed the jury at the defendants' request: "If the jury find that it was part of the original agreement that H. C. Vaughn & Co. might obtain extensions of a month each, on payment of three per cent. of the amount loaned, then that agreement would be an agreement for a usurious taking, which, if referable to the plaintiff, would defeat any recovery by him." And further, in qualification of the general charge, at the defendants' suggestion, the court added that if at the time of the making of the loans there was a contract that Vaughn & Co. should pay for extensions the sums specified, "that would be a usurious contract which would invalidate the note." There is no claim that the agreement for a renewal was absolute. It was optional with the borrowers whether they should have the time of payment extended on the conditions specified or not.

It was erroneous to instruct the jury, as was in effect done, that the mere agreement between the lender and the borrower, at the time a loan is made, that at the option of the borrower the debt may be renewed, or the time of payment extended, after the time named for payment, on condition of the payment of some sum in excess of legal interest, is usurious as to the original loan. The law is well settled to the contrary. *Roberts v. Trenayne*, Cro. Jac. 507; *Burton's Case*, 5 Rep. 69; *Cutler* v. *How*, 8 Mass. 257; *Sumner* v. *People*, 29 N. Y. 337; *Ramsey* v. *Morrison*, 39 N. J. Law, 591; *Downey* v. *Beach*, 78 Ill. 53; *Davis* v. *Rider*, 53 Ill. 416; *Lawrence* v. *Cowles*, 13 Ill. 577; *Gambril* v. *Doe*, 8 Blackf. 140; *Conrad* v. *Gibbon*, 29 Iowa, 120; *Spain* v. *Hamilton*, 1 Wall. 604; *Lloyd* v. *Scott*, 4 Pet. 205. Of course, if the circumstances of the case should justify the conclusion that the fixing of a definite period of time for payment, with an agreement for an extension at a usurious rate of interest, was a mere device to evade the statute, the mere form of the agreement would not be allowed to defeat the purposes of the law. *Burton's Case, supra; Pike* v. *Crist*, 62 Ill. 461. See, also, other cases cited above. But the instruction of the court was not thus qualified. The mere agreement for such an extension at the option of the borrower was in effect declared to make the notes usurious, without regard to the good faith of the parties in fixing the day of payment, or their purpose to make

that really the time when payment should be made. For this reason a new trial must be granted.

With reference to another trial, we will refer to the first of the defendants' requested instructions. The proposition that if a general agent, acting as such in lending money for his princpal, makes a usurious exaction from the borrower, that will affect the principal and work a forfeiture of the debt, is too broad a statement of the law. If the exaction is for the benefit of the principal, and he knowingly receives the benefit, the proposition is correct. *Lewis* v. *Willoughby*, 43 Minn. 307, (45 N. W. Rep. 439.) But if the exaction is made by the agent solely for his own benefit, without the knowledge, authority, or sanction of the principal, and without reason on his part to anticipate such conduct on the part of his agent, the principal, if he has not received the benefits of it nor in any manner ratified it, is not affected by such illegal exaction. *Acheson* v. *Chase*, 28 Minn. 211, (9 N. W. Rep. 734;) Mechem, Ag. § 745, and numerous cases cited. See, also, *Avery* v. *Creigh*, 35 Minn. 456, (29 N. W. Rep. 154.) But in the absence of proof to the contrary, the acts of a general agent in making such loans may be presumed, as a matter of fact, to have been authorized by the principal. *Lewis* v. *Willoughby, supra; Rogers* v. *Buckingham*, 33 Conn. 81.

The question is before us whether these defendants could interpose the defence of usury, or could hold the mortgaged property, notwithstanding the mortgages, because of their being usurious. The mortgagors could have interposed such a defence, and could have asserted the invalidity of the mortgages, if usurious; and so may this assignee, to whom, under our insolvent law, the property has been transferred by the mortgagors, and who stands in legal privity with them. *Beach* v. *Fulton Bank*, 3 Wend. 573; *Pratt* v. *Adams*, 7 Paige, 615, 641, 642; *Merchants' Exch. Nat. Bank* v. *Commercial Warehouse Co.*, 49 N. Y. 635; *Brooks* v. *Avery*, 4 N. Y. 225; *Banks* v. *McClellan*, 24 Md. 62; *Union Bank* v. *Bell*, 14 Ohio St. 200. There was nothing in the conditions or nature of the transfer of the property to the assignee having the effect to subject the property in his hands to the payment of the usurious debts, and this case is distinguishable from

those where property is transferred *subject* to a prior usurious charge, or in trust for the payment of such a debt specifically. *Pratt* v. *Adams, supra.*

It is suggested by the appellant that the sheriff was not authorized, by reason of his holding the property under attachment against the mortgagors, to avail himself in this action of the alleged invalidity of the mortgages for usury. We hold that he might make that defence. It is held that the defence of usury may be made by creditors or the officer who has acquired a lien upon the property by execution. *Dix* v. *Van Wyck*, 2 Hill, 522; *Thompson* v. *Van Vechten*, 27 N. Y. 568; *Carow* v. *Kelly*, 59 Barb. 239. The legal privity in estate with the mortgagor, the owner of the property thus acquired, is sufficient to justify the assertion of the invalidity of the prior incumbrance on the property. There is no reason for a distinction in the case of liens by attachment.

We are of the opinion that the grounds upon which the action was dismissed as to the defendant Knowlton,—that is, because he was sued personally, and not in the character of assignee,—did not justify such dismissal.

The plaintiff's motion for judgment on the special findings *non obstante veredicto* did not preclude a motion for a new trial. 2 Thomp. Trials, § 2726; *Chicago & N. W. Ry. Co.* v. *Dimick*, 96 Ill. 42; *Brannon* v. *May*, 42 Ind. 92.

Order reversed.