LEMUEL R. HALL *vs.* CALE MAUDLIN *et al.*

Submitted on briefs June 15, 1894. Reversed July 10, 1894.

No. 8823.

**Usury under pretense of a general agent's commission.**

Where a money lender intrusts the entire management of his business to a general agent, with unlimited authority to conduct it according to his own discretion, and with the understanding that he shall obtain the compensation for his services as agent from the borrowers, in the form of bonus or commission, if the agent exacts from a borrower a bonus or com-

mission which, together with the interest reserved in the contract, amounts to more than the maximum rate of interest allowed by law, the transaction is usurious.

Appeal by defendants, Cale Maudlin and E. Cooley, from an order of the Municipal Court of the City of Minneapolis, *Andrew Holt, J.*, made February 10, 1894, denying their motion to set aside the findings and decision of C. B. Elliott, J., and grant a new trial.

The plaintiff, Lemuel R. Hall, resided in Chicago, Ill., and on March 14, 1888, appointed Ambrose B. Evarts of Minneapolis his attorney in fact to loan money for him, take security and collect it when due with full power to sell and convey property taken on mortgage and to do all and every thing whatsoever in that business that Hall himself might do if personally present. Under this authority, Evarts loaned for Hall on January 20, 1890, $250 to Cale Maudlin on his note for sixty days bearing eight per cent interest. E. Cooley indorsed the note as surety. Evarts retained $25 of the money as his commission on the transaction. When due the note was presented for payment but was not paid, and it was protested and notice given the indorser. This action was afterwards brought to recover the amount due thereon. The defendants pleaded usury. On the trial of the issues the court made findings of the facts above mentioned and also found that Maudlin applied to Evarts to secure for him a loan of money and agreed to pay him $25 for his services and did pay him that sum out of the money borrowed. As conclusions of law the court found the note was not usurious and that plaintiff was entitled to judgment for the amount due thereon. A case was made containing all the evidence and on it defendants moved for a new trial, but were denied and they appeal. The discussion here was mainly upon the evidence.

*A. D. Polk*, for appellants.

*Charles G. Laybourne*, for respondent.

MITCHELL, J. The defense to this action was that the note sued on was usurious, and the only question on this appeal is whether the finding to the effect that it was not is justified by the evidence.

There is practically no conflict in the evidence. The note, which was for $250, payable in sixty days, with eight per cent. interest,

was given for a loan of money. The loan was obtained from plaintiff's agent, Evarts, in Minneapolis. Plaintiff lived in Chicago, and some two years previously had placed quite a large sum of money in the hands of Evarts for investment by loan. He appointed Evarts his general agent, with absolute and unlimited authority to transact all kinds of business, according to his best judgment, as fully as he himself could have done if personally present. He took no part in the business himself, but left everything to the sole discretion of Evarts, who never consulted him, but loaned money when, to whom, and upon such terms as he saw fit, and, when it was repaid, loaned it again as he pleased. Evarts' general mode of doing business was to charge the borrowers, in addition to the interest provided for in the note, a bonus or commission, varying from five to ten per cent. on the amount of the loan. The amount of this bonus or commission was not fixed with reference to any services performed, or claimed to have been performed, for the borrower, in the particular transaction, but with reference to Evarts' general expenses in running his business, such as office rent, clerk hire, and the like, so that these bonuses or commissions might pay all his expenses, and leave him "a fair amount of profit in his business." There is no evidence that plaintiff gave Evarts any express authority to charge more than the legal rate of interest, and no direct evidence that he knew that he was doing so; but it does appear that he paid Evarts nothing for his services, and that the understanding between them was that he "would get his commissions out of the charges; that whatever he realized from the business would be from commissions that people would pay him for getting the money for them." Translated into plain English, this meant that Evarts was to get his compensation from the borrowers, and was left to realize what he could out of the business in that way.

When the loan was made to the defendants, Evarts, in accordance with his usual custom, retained, out of the amount loaned, $25, giving the defendants only $225. It is idle to claim, from the evidence, that Evarts was, in this transaction, a loan broker, or in any sense the agent of defendants. He was acting solely as the agent of plaintiff, and performed no services beyond what any lender would do in his own behalf. He did nothing that could have formed any sort of basis for any charges against a borrower, unless it was the

trifling matter of drawing up the note for defendants to execute. It is not even pretended that the amount of $25 was fixed with reference to any services performed for defendants, but, in accordance with the general practice above explained, with reference to Evarts' expenses in and compensation for conducting the business.

If the business had been conducted by plaintiff personally, no one would question the usurious character of the transaction. No one would claim that, where a man is lending his own money, he can charge to the borrower, in addition to the maximum legal rate of interest, all the expenses of transacting his own business, including compensation for his own services in attending to it.

But, if he can cast all this burden upon the borrowers by merely turning over the business to a general agent, there would be very little left of the statute against usury.

The "law of usury by an agent" is not in a very satisfactory condition. It would perhaps have been more in harmony with the principles of the law of agency, and have more effectually prevented evasions of the usury laws, had the courts, at the start, adopted the views of Comstock, J., in his dissenting opinion in *Condit* v. *Baldwin*, 21 N. Y. 219, and held that where an agent exacts more than the legal rate of interest the contract is an entirety, and if the principal adopts it he must adopt it as a whole, with all its vices; that if the agent has exceeded his authority the principal is not bound by it, but may repudiate the whole, and recover back his money, but that the principal must either disavow the dealing, or take all the consequences.

In *Acheson* v. *Chase*, 28 Minn. 211, (9 N. W. 734,)—followed in some later cases,—this court adopted in part the doctrine of the opinion of the court in *Condit* v. *Baldwin;* and, in so far as we have, it must be adhered to, as having become in effect a law of property. But we do not propose to extend the application of the doctrine beyond what has been already decided. As was said in *Lewis* v. *Willoughby*, 43 Minn. 307, (45 N. W. 439,) in order to protect honest and innocent lenders from suffering for the secret, unauthorized exactions of their agents, we have gone as far as we can go without opening the door through which any one can evade the law merely by transacting his business through an agent.

Upon the facts the present case is more than covered by the de-

cisions of this court; notably, by *Avery* v. *Creigh*, *35* Minn. 456, (29 N. W. 154.)

Where, as in this case, the lender intrusts the entire management of his business to a general agent, with unlimited authority to conduct it according to his own discretion, and with the understanding that he is to obtain compensation for his services and expenses as agent by way of commissions or bonuses from the borrowers, he cannot be permitted to shield himself behind the pretext that he gave the agent no authority to exact anything in excess of the legal rate of interest, and that he had no actual knowledge that he was so doing.

Where the lender thus places his business under the exclusive and unlimited control of a general agent, if the agent exacts usury the case stands precisely as if it had been done by the principal personally; and such an agent has no right to exact from the borrower, either for alleged services or otherwise, anything which the principal might not have lawfully exacted, had he transacted the business in person. Nor, upon the facts, is it true, except in name, that the plaintiff received no part of this bonus, for he had the benefit of it in defraying the expenses of conducting his own business. Our conclusion is that the findings are not supported by the evidence.

Order reversed.

(Opinion published 59 N. W. 985.)