**BAKER MORTGAGE CO., et al v. D. MITCHELL INVESTMENTS, Inc., et al.**
No. 75-643.

Circuit Court, Dade County.

January 24, 1977.

Sparver, Zemel, Roskin, Heilbronner & Karp, Miami, for the plaintiffs.

Leo Greenfield, North Miami, for the defendants D. Mitchell Investments, Inc. and Harriet P. Mitchell.

FRANCIS J. CHRISTIE, Circuit Judge.

*Final judgment:* This cause came on before me for trial, without jury, on the complaint and amendments to the complaint to foreclose mortgage and other relief filed by the plaintiffs, Baker Mortgage Company, a Florida corporation, (Baker), John Bowles, Franklin O. Briese, Charles C. Cameron, William M. Jennings, Robert M. Morgan, Terry Sanford and W. J. Smith, as trustees of Cameron-Brown Investment Group, a Massachusetts Business Trust, (all jointly referred to as Cameron), and Joseph W. Ehrenreich, Clem C. Glass, Richard S. Grumet, Herbert L. Hutner, Robert L. Lynch, Albert C. Martin, Joseph N. Mitchell, Robert B. O'Brien, Jr., Howard G. Roecker, Burton E. Smith and Arthur W. Vienna, as trustees of Beneficial Standard Mortgage Investors, a California Real Estate Investment Trust, (all jointly referred to as Beneficial), all hereinafter referred to as plaintiffs, the amended answer, the affirmative defenses and counterclaim of the defendants, D. Mitchell Investments, Inc., a Florida corporation, (Mitchell), and Harriet P. Mitchell, (Harriet), hereinafter referred to as defendants, and the reply thereto.

For purposes of convenience, the counterplaintiff and/or counterdefendant status of each of the parties will be omitted except in the final holding of this judgment.

At the outset of the trial, the parties entered into the following stipulations —

A. That all other parties and claims involved in the overall litigation would be excused from the trial of the issues between the above named plaintiffs and defendants, Mitchell and Harriet, and that all such claims would be resolved in separate trials and separate orders or judgments would be entered as to such other claims.

B. That based upon the complaint of the plaintiffs the exhibits attached and the supporting affidavits, a prima facie case to foreclose the mortgage has been established by the plaintiffs.

C. That all defenses and affirmative defenses asserted by the named defendants, Mitchell and Harriet, were withdrawn except as to the affirmative defense of usury, and all counts of the counterclaim were abandoned except as to the count of usury and the relief prayed for thereunder.

D. That the issues raised by the counterclaim asserted by the defendants would be tried simultaneously with the affirmative defenses and that all evidence to be considered by the court in connection with the affirmative defenses and counterclaim, would be received simultaneously.

E. The plaintiffs stipulated that the total principal sum due on the mortgage loan was $3,242,000.00.

Plaintiffs, in their complaint, alleged that on or about July 6, 1972, Baker entered into a construction loan with Mitchell; the loan was evidenced by a promissory note (Exhibit "A" attached to the complaint) and secured by a mortgage (Exhibit "B" attached to the complaint), which indebtedness was secured by the personal guarantee of the defendant, Harriet; that on November 8, 1973, in consideration of additional advances from Baker, the said corporate defendant delivered its supplemental promissory note (Exhibit "B" attached to the complaint), together with a modification to the mortgage, (Exhibit "E" attached to the complaint), which additional obligation was further secured by a further guarantee from the individual defendant, Harriet. It was alleged that the plaintiffs, Cameron and Beneficial, participated with Baker in making the loan referred to, and therefore were joined as plaintiffs; that the loan had been in default since May of 1974, and that as of December 2, 1974, the defendants owed $252,554.55 in past due interest, together with the unpaid principal sum of $3,242,000. The complaint sought the appointment of a receiver to take possession and management of the property, pending disposition of the cause and upon failure of the said defendants to make payment of the sums demanded that the property be foreclosed and sold under the order of the court.

The defendants' amended answer and affirmative defenses generally denied the allegations of the complaint and amendments thereto, and raised among other defenses, the affirmative defense of usury, which allegations were further realleged in the counterclaim, along with other counts.

Judgment was sought by the counterclaim for double the amount of interest paid, together with attorney's fees and costs; that further interest be forfeited and that the notes, mortgages and modifications and any evidence of all indebtedness represented thereby be declared usurious and unenforceable, pursuant to Florida Statutes.

At, or just prior to the trial, the defendants abandoned all affirmative defenses and all counts of the counterclaim, with the exception of the usury affirmative defense and that count of the counterclaim and the defendants conceded that the interest reserved, taken or extracted, did not equal or exceed 25% per annum.

The trial extended over a period of three days, during which time voluminous testimony was taken from witnesses.

The defendants placed into evidence eighteen exhibits, while the plaintiffs offered none.

After trial and oral argument, each party filed a post-trial memorandum in support of their respective positions.

The court, after reviewing the pleadings, considering the testimony and demeanor of the witnesses, the exhibits in evidence, the argument of counsel and post-trial memorandums in support of said arguments, finds as follows —

1. On or about July 6, 1972, Baker, acting on behalf of itself as a participant and as agent for Cameron, entered into a construction loan transaction with Mitchell. The loan was evidenced by a promissory note dated July 6, 1972, under which the sum of $2,000,000 was to be advanced. The note was secured by a mortgage of like date on the property described in Exhibit "A" attached thereto. The note provided for payment of interest at 9% per annum, or 4% above the prime rate of the First Union Bank of Raleigh, North Carolina, whichever amount was greater. Baker participated in the loan to the extent of $200,000, while Cameron participated to the extent of $1,800,000.

2. On November 8, 1973, Baker, acting on behalf of itself as a participant and as agent for Cameron and Beneficial, entered into a "Modification to Mortgage Deed" with Mitchell, and increased the mortgage loan to $3,250,000, which increase was then evidenced by an additional note for $1,250,000, dated November 8, 1973. This note provided for a payment of interest of 14% per annum, or 4% above the prime rate of the First Union Bank of Raleigh, North Carolina, whichever was the higher rate.

3. Advances were made under the mortgage and construction loan agreement of July 6, 1972, as modified by the agreement of November 8, 1973, until the total sum of $3,242,000 was advanced to Mitchell.

4. Baker, a professional mortgage lender, continued to handle all the matters pertaining to the placing and servicing of said loan and the increase thereof, and was a participant in the loan to the extent of $200,000 while Cameron and Beneficial, both professional mortgage lenders, each participated equally in the ownership of the balance of the loan and advanced equal funds in connection with the funding of same.

5. Although the notes did not become due until May 8, 1975, in May of 1974, the loan went into default and as of October 28,

1974, Baker on behalf of itself and its participants, made demand for the past due interest, then unpaid in the sum of $252,554.54, together with the unpaid principal amount of $3,242,000.

6. The total interest as computed by the plaintiffs as being paid or due from the date of commencement of the loan up to and including the maturity date of the loan of May 8, 1975, as reflected by the testimony of the plaintiffs' accountant, was $996,055.09, of which sum $534,324.73 was paid.

7. With the exception of an accountant who was called by the plaintiffs, whose testimony was relied upon by this court to determine the rate of interest charged, no single witness or officer of any of the three plaintiff companies has testified or endeavored to explain or refute in any manner the testimony establishing the usurious nature of the transaction.

8. It has been established by unrefuted, clear and convincing testimony, that Baker, acting as a participant and as the authorized agent of Cameron and Beneficial, received, and in some instances divided with Cameron and Beneficial, the following additional fees, commissions, payments or extractions, each of which should be added to the interest paid or demanded —

A. A 2% discount to Baker and/or Cameron ............ $40,000.00

B. A disbursement fee to Baker ................................ $ 2,000.00

C. A title insurance kickback to Baker, in excess of the cost of the title policy written by Baker ........ $ 7,184.50

D. A discount fee divided between Cameron and Beneficial ......................................................... $48,750.00

E. A disbursement fee to Baker ................................ $ 8,125.00

F. An administration fee to Baker .......................... $    500.00

G. An application fee to Baker ................................ $12,500.00

H. A brokerage commission fee to Baker, by way of a note and second mortgage on the property .. $65,000.00

I. Improvements made to Baker's office and paid for by Mitchell .................................................. $ 3,000.00

J. Fee received by Baker and admitted by affidavit as an extra interest charge ................................ $15,500.00

Total additional charge ...................................... $202,550.50

104

*Feemster* v. *Schurkman*, 291 So.2d 622; *Stoutamire* v. *North Florida Loan Ass'n.*, 11 So.2d 570; *Williamson* v. *Clark*, 120 So.2d 637; *Speir* v. *Monnah Park Company*, 84 So.2d 687; *Burleigh House* v. *Financial Federal Savings and Loan Association*, 305 So.2d 59.

9. When the foregoing charges or extractions are added to the total interest paid, demanded or extracted as reflected previously, in the amount of $996,055.09, the sum paid, demanded or extracted, as interest is the amount of $1,198,605.59. The maximum sum allowable as interest at 15% per annum for the sums outstanding from time to time, for the period of the loan as testified to by the plaintiffs' witness, is the sum of $1,006,157.47.

10. The sums paid, demanded or extracted, exceed the maximum permitted by Florida Statute, by $192,442.62. The total cumulative interest, fees, commissions and extraction paid, demanded or extracted, when reduced to a percentage, yields a true rate of interest on the sums outstanding from time to time, of 18.2% per annum.

11. That the taking of such interest, fees, commissions and/or extractions, is contrary to the provisions of Chapter 687, Florida Statutes, and is in violation thereof. The penalties as therein provided should be assessed against the plaintiffs.

12. At the outset of the litigation, a receiver was appointed, upon application of the plaintiffs. The receiver is still in possession of the said property.

It is, therefore, ordered and adjudged as follows —

1. That the court has jurisdiction of this cause and the parties hereto.

2. The plaintiffs (counterdefendants), Baker Mortgage Company, a Florida corporation, John Bowles, Franklin O. Briese, Charles C. Cameron, William M. Jennings, Robert M. Morgan, Terry Sanford and W. J. Smith, Jr., as trustees of Cameron-Brown Investment Group, a Massachusetts Business Trust and Joseph W. Ehrenreich, Clem C. Glass, Richard S. Grumet, Herbert L. Hutner, Robert L. Lynch, Albert C. Martin, Joseph N. Mitchell, Robert B. O'Brien, Jr., Howard G. Roecker, Burton E. Smith and Arthur W. Vienna, as trustees of Beneficial Standard Mortgage Investors, a California Real Estate Investment Trust, hold a valid first mortgage on the property described in Exhibit "A" attached hereto, which said mortgage is in the principal sum of $3,242,000, and which said principal balance be and is hereby reduced by

$1,473,750.44, to a principal balance of $1,768,249.56. That all interest on the said principal balance be and is hereby forfeited. That the reduction as hereinabove provided is in accordance with paragraph 3, as hereinafter set forth.

3. That judgment be and is hereby rendered in favor of the defendant (counterplaintiff), D. Mitchell Investments, Inc., on its counterclaim against the plaintiffs (counterdefendants), Baker Mortgage Company, a Florida corporation, John Bowles, Franklin O. Briese, Charles C. Cameron, William M. Jennings, Robert M. Morgan, Terry Sanford and W. J. Smith, Jr., as trustees of Cameron-Brown Investment Group, a Massachusetts Business Trust and Joseph W. Ehrenreich, Clem C. Glass, Richard S. Grumet, Herbert L. Hunter, Robert L. Lynch, Albert C. Martin, Joseph N. Mitchell, Robert B. O'Brien, Jr., Howard G. Roecker, Burton E. Smith and Arthur W. Vienna, as trustees of Beneficial Standard Mortgage Investors, a California Real Estate Investment Trust, in the total sum of $1,473,750.44, (double the amount of the interest paid, demanded or extracted), which sum be and is hereby offset, as provided in paragraph 2, above.

4. That the net sum due from the defendant (counterplaintiff), to the plaintiffs (counterdefendants), as hereinabove provided, in the amount of $1,768,249.56, shall be paid by the said defendant (counterplaintiff) within 60 days from the date hereof, failing which the clerk of this court shall sell the property at public sale to the highest and best bidder for cash on the 29th day of April, 1977, at 11 o'clock A.M., as set forth hereinafter at the south front door of the courthouse, in Dade County, Florida, in accordance with the provisions of Section 45.031, Florida Statutes.

6. This court shall retain jurisdiction to decide the distribution of any funds remaining after sale of the said property and distribution of the proceeds.

7. That the court shall set the cause for further hearing to make a determination as to any priorities or payment of claims which may have been resolved by separate hearings pertaining to the other defendants or counterclaimants in the said cause.

8. The receiver shall continue in possession and management of the property, pending further order of this court.

9. That the court shall retain jurisdiction of this cause for the determination and assessment of attorney's fees, costs and receiver's charges, and any and all matters which may arise in connection with the said property.